Chief Judge McKeon, may it please the Court. My name is Jonathan Massey, here for the Plaintiff's Appellants, and with the Court's permission, I'd like to reserve five minutes for rebuttal. Thank you. We agree with Judge Fuentes and believe that the District Court erred in dismissing with prejudice under the first filed rule, because that was the death knell of plaintiffs' actions and deprived more than 200 plaintiffs of any forum for their claims that they'd been poisoned by defendants' toxic chemicals. All the plaintiffs were trying to do in filing in Delaware was to preserve some forum somewhere to hear their claims. As Judge Fuentes said, quote, this is not a litigation strategy designed to get the plaintiffs multiple bites at the apple. Rather, this is a litigation strategy designed to get the plaintiffs a seat at the table to present their claims to a single U.S. District Court. Judge Fuentes was correct that dismissal with prejudice in this case was contrary to this Court's prior precedent and to the general obligation of a federal court to hear cases within its jurisdiction. Neither the EEOC case nor the Crosley case approved dismissal with prejudice in the context of the first filed rule. In other cases, such as failure to comply with scheduling orders or failure to retain local counsel, this Court has reversed dismissals with prejudice because of their draconian effect. Indeed, in the Walton case, which was en banc, Judge Garth indicated that courts should not dismiss claims with prejudice even when two actions are filed in the same district. That case involved a second employment discrimination claim filed by a second group of lawyers while the first case was still pending. Judge Fuentes was also correct that the District Court's dismissal conflicts with precedent in the Fifth, Seventh, and Ninth Circuits. The defendants are wrong in saying that those cases are limited to instances where the first action was dismissed for jurisdictional reasons or where the suits were brought by different parties. The principle is broader than that. It's about preserving a plaintiff's access to a forum. For example, in the Fifth Circuit's decision in Berger, which involved two cases brought by the same party, not different parties, the same party, the Fifth Circuit cited the Moores Treatise for the proposition that, quote, if the first filed action is vulnerable to dismissal on jurisdictional or statute of limitation grounds, and this is a statute of limitations case here, the court in the second action should stay or transfer it rather than outright dismiss it. So that language for Moores applies directly to this case. Judge Fuentes also pointed to abstention law, where duplicative cases are stayed rather than dismissed, and preclusion law, where the traditional rule, as recognized by the Supreme Court's 2001 decision in Semtec, is that a plaintiff who loses in one forum on statute of limitations grounds is generally able to file a second suit in a different forum with a longer statute of limitations grounds. So in some sense, we're here today because of an accident of timing. If the Louisiana court had dismissed plaintiff's actions sooner under the Louisiana prescription statute, then by the time the plaintiffs filed in Delaware, there might not have been any Louisiana action at all, and their first filed rule never would have come into play. So we think it's arbitrary to apply the first filed rule to bar a case that would not be barred by preclusion law. Now, the main objection to our position we recognize is that we are, quote unquote, forum shopping. And I think there are at least four answers to that. First is that a stay would prevent forum shopping and any risks of inconsistent judgments and duplicative litigation. A dismissal is not necessary. The second point is that preserving the ability to have one's claims heard in some forum cannot be seen as impermissible forum shopping. The only issue that the plaintiffs lost in the Louisiana courts was whether the Louisiana prescription statute barred their claims. Proceeding in Delaware does not give them a second bite on that question, the second bite of the apple on that question, which was the question of the Louisiana prescription statute. The Delaware action only gives the plaintiffs the first bite of the apple on the question of whether they're entitled to proceed under the Delaware statute of limitations. The third response to forum shopping is that other doctrines like abstention and preclusion law permit successive filings. Defendants could make the same forum shopping objection when a plaintiff sues in state A, loses on limitation grounds, and then brings another action in state B under a longer statute. But the law allows that strategy. And my last answer to forum shopping is that one person's forum shopping is another person's strategic maneuvering. In the Keaton case in 1984, the Supreme Court said, quote, Petitioners' successful search for a state with a lengthy statute of limitations is no different from the litigation strategy of countless plaintiffs who seek a forum with a favorable substantive or procedural rule or sympathetic local populations. And the Supreme Court in the Ferens case, which is cited in the rehearing petition of 1990, yes. Could you address Martinez? Martinez, yes, Your Honor, I will. It's possible that you could win the battle and lose the war. Correct, Your Honor, that's correct. And so the Martinez question is a slightly different question than the first followed one. It is, well, just to give a little background, the Delaware Superior Court ruled in 2012. My guess is that Ed, one of my colleagues, is aware of the background you're going to give us. If you want to use your time, though, well, you can. But I'd be shocked if all my colleagues were not well aware of the problem it creates under statute of limitations. Well, so the Delaware Superior Court said there was no Martinez problem because the class action, according to the Delaware Superior Court, had progressed in Texas until 2010. You can have cross-jurisdictional tolling, but the question is when did the statute restart. Right, and the Delaware Superior Court, not the Supreme Court, the Supreme Court, you're correct. The Supreme Court never ruled on it because I think the matter never got to the Supreme Court. The Supreme Court did not rule on when it stopped tolling, but the Superior Court did. The Superior Court said it continued until 2010, and then Judge Andrews and Martinez originally found that position persuasive, then he changed. And with respect, we think Judge Andrews was wrong and Martinez because the question of when tolling stops in this circuit is governed by Yang v. Odom, which is a 2004 decision on which Justice Alito sat. And the issue, it didn't write, but it was on the panel. The question in Yang v. Odom where there are two class certification orders and Yang holds that only a clear, definitive, and unambiguous denial of certification under Federal Rule 23 can stop tolling. In this case, there was no clear, definitive adjudication. In fact, there was no Federal motion in Federal court for certification under Rule 23 at all in the Texas case. Well, maybe to address along the lines of what the Chief Judge said, what effect does Martinez have here? Well, these plaintiffs would likely be barred by the same rule. If Judge Andrews were affirmed, these plaintiffs would likely be barred by the same principle. Isn't the essence really of the Martinez decision, of Judge Andrews, that the Louisiana law on this is that there is preclusive effect and a res judicata under Louisiana law has preclusive effect? Isn't that the impact of Martinez? Martinez says that under the Louisiana prescription statute, exactly, these plaintiffs would be barred. Okay, and doesn't Semtec require us to follow state law on a diversity question like this? Well, there's no case saying that the Louisiana statute of limitations is extraterritorial. In other words, there are no Louisiana cases. Yes, but Semtec says that in a diversity case, to determine the preclusive effect, you look at the law of the state. Correct. Okay, and the law of the state of Louisiana is that a statute of limitations determination is a determination on the merit and it carries with it preclusive effect elsewhere. Doesn't that apply in Delaware? Doesn't that affect what Judge Andrews found in Martinez? Well, I think he found that the tolling had stopped in 1995, but to your question, no. Louisiana does not say that its statutes preclude the Delaware courts from applying their own statute of limitations. There are no such Louisiana cases. Those cases that have been cited in Martinez involve people bringing repetitive claims under Louisiana law in Louisiana courts. We concede that we could not go back to Louisiana and try to bring our case there. Are you familiar with the Griffin case from Louisiana, which adopts certain equitable principles? I'm not directly recalling it, Your Honor, but I know that it's a general principle of Louisiana law. Is there not a statute in Louisiana that also applies equitable principles? Yes, yes. And part of those equitable principles is that a plaintiff should have a case to hide, at least in some form. Exactly. In Louisiana, in fact, the law in Louisiana is that all doubts are construed against prescription and that the plaintiff ought to be entitled to a form of some kind. So we think that certainly there were no cases cited in the Martinez proceeding involving the denial of a form to a plaintiff in a second state outside Louisiana where the plaintiff's second claim was based on a statute of limitations like Delaware rather than a Louisiana prescription statute. What role should Martinez have in our decision-making now? What role? It has whatever role you all would like it to have. Can we quote you on that? Yes, you can. You are the judge. I mean, honestly, the Martinez appeal was filed and there has been no briefing, and so it's there and we'd be, of course, happy to address it in whatever way Your Honors think. The one approach would be in the usual course to resolve this case and allow the briefing to continue in Martinez and have that separately argued. We don't even have a panel decision dealing with that. Correct. Correct. It hasn't progressed since the notice of appeal, essentially. So I'm happy to address it. I'm only a portion of the way through my Martinez arguments. So we have a lot more to say about that, but we're also amenable to the idea of letting that proceed in a separate appeal under the normal course. But the strange thing for us about Martinez is that, of course, is that the Yankee-Odom point, as I mentioned, the procedural history of the Texas class action is fairly complicated, but I want to rehearse it with you all to go through it because the 1995 order on which Judge Andrews relied was a general nonspecific housekeeping order. And as I mentioned, there had been no federal motion for certification in that case. There had been one under Texas law before the case was removed. There was a Texas state court. And, of course, the Texas state rules on certification are similar to the federal, but they're not the same. So it's correct to say there was no federal Rule 23 motion in that case. But the case was also dismissed. The case was dismissed and informed on convenience grounds. But it wasn't dismissed. Judge Lake, who was the Southern District of Texas judge in that case, retained jurisdiction in case it could come back. And it did come back. And in 2004, he issued an opinion saying, I've never relinquished jurisdiction. This is a continuation of the prior proceeding. And then he remanded the case to state court. And he remanded it as a putative class action. He didn't remand it. So, counsel, could I jump in here? So the impact of that ruling by the Texas judge was that there was needed certification of the class, and there was no final judgment on that state action, right? Correct. He remanded it as a putative class, and the Texas state courts accepted it as a putative class. And then it was objected to. The defendants objected and said, that's impermissible. It shouldn't be reinstated. The Texas state courts said, yes, it should be. We reinstate this as a putative class. They then took an appeal in Texas, and the Fourth District Court of Appeals in Texas rejected the appeal. Then, in 2009, the plaintiffs filed a motion for class certification in the Texas state courts. Did you mention that the judge, in his order, included a return clause? Yes, Your Honor. I'm sorry, he did. And that was what your court commissioned. Which would suggest that that case was never dismissed for any prejudicial reason. Correct. It remained on his docket. It was always there. It was simply sort of a stay. The return order was, all of you can come back if your case is not heard in another case. Exactly, Judge Weintraub. You're right, and I apologize for not stressing that. You're absolutely correct. Let me change our scene a little bit. Let me ask you this question. Is there any circumstance, once the first file rule applies, when dismissal with prejudice is appropriate? We think so, yes. And I think Judge Fuentes took that view, too. If the second action is clearly barred by mootness or race judicata, then... Here's my question to you, then, since I see where you're going with that. What would be the purpose of the first file rule if the defendants have that remedy anyway? I mean, there would be no reason, literally, to have a first file rule because the second action would be if the trial defendant says race judicata or he says vexatious litigation or whatever. What would be, in that circumstance, literally, what would be the purpose of having a first file rule if that's what you're asking the party to go to? Well, the main purpose, of course, is stays and transfers. Our point is that dismissals with prejudice would be fairly rare because they would be limited only in the instances where the plaintiffs clearly had no right to reform. And our point is... So what kind of rule do we craft here, counsel, where we're dealing with an abusive discretion standard if, in fact, dismissal is an abusive discretion in this type of a situation? And if we were to write an opinion, how should we write that opinion? What are the circumstances that would justify such an invocation of the first file rule such that the action should be stated as opposed to dismissed? Right. So the discretion part under the first file rule, we think, pertains to the second court's discretion to proceed with the action while the first action is pending. And then it would not be a permissible exercise of discretion to dismiss with prejudice unless there was some other legal basis, race, judicata, jurisdiction, mootness, that shows that the plaintiffs are clearly unable to proceed with prosecuting their claims before the second court. Is form shopping an appropriate basis? Well, form shopping, I think, is a broad term, Your Honor. Okay, so let's make it easy. Okay. It's equally possible, right, or there's an argument to be made that they're clearly just working the system. Let's say there's someone in Delaware who, you know, has had this type of case and they're hoping to get that person, and they do. The appellate court sees that and seizes upon that in its reasoning and specifically uses that as a basis for saying it's clearly form shopping. Is that an instance where you would say, okay, despite the argument that, you know, we're waiting to be heard on the merits in the first forum, the second forum presents facts like that, that's a basis for dismissal? Well, if I understand your hypothetical, it was just that there was a second action filed with the hope of getting a certain judge on the wheel or something. And if it was a completely redundant – If you want to play with the hypothetical, fine. Okay, sorry. I'm just trying to figure out, is there an instance where it's appropriate to dismiss with prejudice because it's apparent to the reviewing court that the form shopping was impermissible? There have been cases where the abuse of procedural rules has been seen as an appropriate basis for dismissal with prejudice. And, of course, there are lots of jurisprudence, whether it's Rule 11 or 1927, and there are plenty of remedies for vexatious litigation. Whether that might, in an extraordinary case, rise to the level of dismissal is going to be a fact-specific inquiry. To Judge Ludoway's point, what if Delaware and Louisiana have the exact same statute of limitations and treat cross-jurisdictional totaling the exact same way? In that situation, doesn't a district court have the right to dismiss? A second-file action with prejudice. That – you know, that's a – if the – Same statute of limitations. I think only if there has also been a choice of law determination, as in, like, the Thompson Trucking case, where the plaintiffs in Thompson Trucking said, we are all in Louisiana, we think our claims are governed by Louisiana law, and that is our forum. The plaintiffs ordinarily are allowed to choose a state with a longer limitations period. If it's not longer in your hypothetical, then you would be right. If it's not longer, then they wouldn't do it. But in the instance I'm thinking of, it's the Semtex situation where the court says, traditionally, you can go with the longer one. So you're right in your case. But, so, did I – does Judge Smith have a question that I didn't answer? Or – Judge Smith? I started to ask the question, but was interrupted. So keep going with the follow-up. Okay. I didn't want to cut you off. Dumb question, Tony. Why did you file in Louisiana and then file in Delaware? Because these are – this is a multi-defendant action with everybody has contacts in numerous states. And figuring out which state has the right jurisdiction and venue is not simple. The chemical, the pesticides were shipped from Louisiana. There are a lot of facilities there. A lot of companies were initially headquartered there. Then some were incorporated in Delaware. And so there was a legitimate question. There are states with multiple contacts, multiple jurisdictional contacts and multiple places where it made logical sense to sue. Counselor, going back to Judge Greenaway's question and Judge Smith's about what test we actually use. Yes. Are you putting the district courts in the business of needing to ascertain the subjective motive of counsel? In other words, are we to say it's sufficient if there is some plausible basis to think there is uncertainty about jurisdiction or a good faith basis to question statute of limitations, or do we get into a battle of affidavits and questions of mixed motive as to legitimate types and illegitimate types of foreign shopping? Your Honor, we think it's a wholly objective test. I don't mean to depart at all from Judge Fuente's position. His position, as I understand it, is when there was some – when there is no doubt about the viability of the plaintiff's case in the second forum, then it can be dismissed with prejudice. When it's dead on arrival because of rape, judicata or something else. If I could ask you then, whose responsibility is it to make that argument? Is it the party who is seeking to avoid the dismissal without prejudice to convince the district court that there is a concrete risk that the merits in the first file case won't be reached? Right. Rather than having the judge have to spot all the potential issues. Who carries that responsibility and how precise should it be? The questions have gone to aren't there circumstances where a dismissal with prejudice should be warranted? Let's take it in a slightly different way. Should there be a circumstance where a dismissal with prejudice is inappropriate if the party seeking to avoid dismissal with prejudice shows there's a concrete risk, either for personal jurisdiction or subject matter jurisdiction or statute of limitations reasons, that first file case will not be decided. Should it be that precise and should it be the party who is trying to avoid that remedy? Yes, I think that's a good role. Counsel? Yes. What should be the role of judicial economy? That is the role of the district judge in managing her or his caseload. Where does that come into any test that we might adopt? Where does that come into whether or not a judge's discretion has been abused? Well, the district court will always have wide discretion in staying and transferring, and I think that is the kind of docket management with which discretion is usually concerned is most appropriate. But that answer is a tautology. A judge has discretion because he has discretion. The question is what role should that factor have here and what should we look to in terms of case management and docket control as weighing in the decision-making process? Well, I think because transfer and stay will not eliminate a plaintiff's right to a forum, the district court will have wide discretion in that area. It's only when the district court's ruling eliminates the right to a forum at all, as it did here, that you raise the question of an abuse being an error of law. And so as I understand Judge Fuente's position, which we think is correct, is that essentially stays and transfers take care of the problem, and that's where the district courts will have a substantial discretion, a substantial role. So except for extraordinary circumstances, your position is a stay is the most appropriate. Once you determine that the first file rule applies, a stay in almost all cases is the only appropriate exercise of the district court's discretion. I think as a statistical matter that will be true. I don't think the court needs to say that. It simply would be a result of the task proposed by Judge Schwartz. I'm sorry. If we were to find that dismissal with prejudice was outside the realm of the district court's discretion and remanded the matter to the district court, would it then have discretion as to what remedy to apply here? Could it transfer the case within its discretion back to Louisiana? Not if that eliminates the right to a forum altogether. We would say that a transfer that has the same effect as dismissal with prejudice is also impermissible. Did you reserve right to rebuttal at any time? I did. I'm sorry, Your Honor. I didn't try to reserve five minutes. Counsel, even the 57th and 9th have put some limits as to vexatious and harassing and abusive process type of litigation as an appropriate exercise of discretion in dismissal with prejudice. What is to keep a plaintiff in the situation of your clients where there are multiple forums, from taking a rule that we announce if we were to adopt the position you suggest, to then go and file in Texas and Louisiana and California and Hawaii, the multiple jurisdictions you have available, at some point for defendants to be defending in all of those jurisdictions, even to see which one is going to conclude it's not time-barred, isn't it vexatious and harassing? Well, we don't think it was in this case at all because we were very open and transparent about what we were doing and why there was a letter sent to the Eastern District of Louisiana explaining that. And I think that in most cases there will simply be stays, and so the defendants will not – well, in every case there will be a stay or transfer, so the defendants will not face the risk of duplicative litigation. So what you are arguing, counsel, is that by definition trying to keep your cause of action alive, which is what you were trying to do, could not be vexatious. Is that right? Correct. Preserving a right to a single forum should not be seen as vexatious. And I don't think the court's opinion needs to define the outer limits of the vexatious problem. I don't think it's present at all in this case, and we don't think the court would need to close the door on what would happen in an extreme case. We did seek a stay. I'd like to say we sought a stay twice in Delaware. First we asked to stay in light of the Delaware Supreme Court, and then in response to the first file motion we sought a stay. Do we have time for further questions? Thank you. Thank you very much. Good morning. May it please the court. Chief Judge McKee. Andrea Newman with Gibson Dunn on behalf of Dole Food, arguing for all of the defendants except for the jurisdiction issue, which will be handled by Chiquita's counsel. As both the majority and the dissent are in agreement that the first filed rule applies here, I would like to address my initial comments to Judge Andrew's exercise of his discretion in dismissing these claims below with prejudice under the first filed rule. In this case, where plaintiffs filed in multiple jurisdictions both before and after they filed in Louisiana, this court has the luxury of knowing not only that another reasonable jurist could reach the same conclusion that Judge Andrew's reached, but that she did. Judge Roccanelli, who was the recipient of 30 of the claims that started out in Judge Barbier's courtroom, I think the court understands that Judge Barbier had 260 plaintiffs in front of him, and when they thought they might lose there, 30 of them went to Delaware State Court, 230 went to Delaware Federal Court. Judge Roccanelli dealt with the 30 that went to her courtroom, Delaware State Court. What did she do? She dismissed them with prejudice under Delaware's version of the first filed rule, which is also known as the McMurray Doctrine. Her dismissal order was approved by an en banc Delaware Supreme Court, who found that she quite rightly, and truly without hesitation, that she quite rightly dismissed them with prejudice because they had had one fair bite at the apple. What they were seeking was most definitely conflicting rulings on the same issue, and that they were not entitled to waste Delaware's judicial resources in the state court forum. And the Delaware Supreme Court affirmed her, despite plaintiff's arguments, that she should have done a race judicata analysis, because her opinion, unlike Judge Andrews, came after the Fifth Circuit's decision. The Delaware Supreme Court said she didn't need to do that. You've had your day in court, that's all you get. Now plaintiffs continue to acclaim abuse of discretion here, despite the fact that we have six, seven reasonable jurors who have reached the same conclusion that Judge Andrews reached. And they do so, I would submit, on a number of faulty premises. And I'll address four of them briefly if I can. The first faulty premise is that the statute of limitations analysis in Delaware matters in terms of one year versus two years. The one year versus two year distinction on the statute of limitation does not matter at all. Whether these plaintiffs' claims are timely anywhere in the United States depends on whether class action tolling in Texas ended in 1995 or 15 years later in 2010. That's the only question, and those are the only two answers that have been posed to the courts before which the issue has been argued. And if, like Judge Barbier in the Fifth Circuit in Chivary, it's like Judge Andrews in Martinez, and like the Hawaii Supreme Court in Patrickson, it is determined that the tolling ended in 1995, under federal application of Delaware law on a diversity matter, then the claims in Delaware are 15 years too late, just like they were 15 years too late in Louisiana. And the court has asked about Martinez and what it means here. And I think what Martinez does is it strips back the facade of whether or not the one year or the two year statute matters. This is a case where everybody's 15 years too late or they're timely. And the issue of whether or not they're 15 years too late is a class action tolling issue which Judge Andrews and Judge Barbier answered in exactly the same way, relying on exactly the same authorities, which means, of course, if Judge Andrews were forced to answer the same question again in Chavez as he did in Martinez, that they are relitigating the issue they litigated in Louisiana. That is the real pretense, that they are in Delaware to litigate something different. They litigated the tolling issue, class action tolling in, that precise issue in Louisiana. They must litigate and get a different result in Delaware to proceed. And that is improper. Their second faulty premise is that res judicata does not apply here. It is most certainly true, as one of your honors mentioned earlier, that under SEMTAC we must apply Louisiana law to the preclusive effect of Judge Barbier's decision in Chivari. Under Louisiana law- May I ask you a question, Ms. Newman? Yes, your honor. Having two cases in two separate jurisdictions strikes me as the very essence of the first law rule. You have to have two cases. As I read your petition for hearing, it reads as if to say whenever there is such a circumstance, the court must dismiss the second case. Is that your position? No, your honor, that's not our position. It is your position. I assume that the judge looking at the second case has a range of options available. Yes, your honor. Including dismissal without prejudice, staying in the matter, transferring to the first jurisdiction. Correct. Why was it correct for the judge in this case to dismiss with prejudice? I think it was correct here for a number of reasons. First, Judge Andrews was faced with a case where you had the same party filing both suits. And the courts certainly look at those cases differently than when you have two different parties each choosing their own form of first choice, so to speak. So you have the same parties. You have the letter to Judge Barbier in which the plaintiffs admit that the action is fully duplicative. There was no pretense there. They said, look, we filed a wholly duplicative case in Delaware. And why did they file it? Because they were afraid they were going to lose in Louisiana on the class action tolling issue. So what Judge Andrews saw, quite rightly, was a duplicative piece of litigation where people sought to re-litigate an issue and get an inconsistent ruling. It sounds to me like it's the typical circumstance of the first file rule. You have the same litigants with the same issues in two separate forms. I don't think it's typical, at least my impression from reviewing the authorities, is the same plaintiff filing both cases is not typical. Usually it's a rush to the courthouse because the different parties have decided they prefer different forms situation. So I don't think that part's typical. I don't think it's typical to admit that the litigation is completely duplicative. A lot of plaintiffs try to argue there's something different about the second suit. And they certainly don't have the same level of clarity, given all the other litigation of this exact same issue elsewhere, of what the issue is that they were going to have to litigate and win to be able to maintain their claims in both jurisdictions. Counsel, putting aside typicality, and I don't mean as set forth in Rule 23A, putting aside the question you were just addressing, do you ascribe to Judge Andrews' invocation of the metaphoric second bite at the apple here when the plaintiff never really had the opportunity in the first instance to have the substance of his claims dealt with judicially? How could that be a second bite at the apple? Well, Your Honor, the plaintiffs were able to address the merits of defendants' affirmative defense on statute of limitations. And the reason I think it is a second bite at the apple is because Judge Andrews had to address the same question that Judge Barbier already answered and give them a different answer for them to move on to what I think Your Honor is referring to which is the merits of their claims such as exposure, causation, harm. So I think that's why it is a classic second bite at the apple. And on the issue of dismissal with prejudice, which has become more of an issue in the rehearing briefing than it was previously, I did want to make sure the court was aware that the plaintiffs told Judge Andrews in their answering brief at 18 foot note 9 that it was irrelevant to them whether he dismissed with or without prejudice because their statute in Delaware would run either way. They had only filed two days before. What purpose does dismissal serve rather than staying? Why dismiss as opposed to stay? I think dismissal is the right response, Your Honor, where you have duplicative litigation because if you allow people to do what they try to do here, which is essentially to have a placeholder suit in case they lost in the other jurisdiction, then you are inviting the things the first file rule is designed to prevent. The question is what would the harm be to you because if it's a placeholder, presumably you don't lose the ability, presuming that it goes the way you'd like in the first suit, to then make whatever race, judicata, or other preclusive effect arguments that you could have made in the first instance. What's the harm that you or your clients would suffer by having to stay in place? And also institutional harm because you seem to be talking about institutional harm. What's the institutional harm? Well, I think the institutional harm, Your Honor, is that once you endorse the filing of the placeholder actions, and I think you can assume they will be filed. I mean here you have plaintiffs that went to over six different states testing the waters, right, and so they could stack those states up for different limitations. For instance, they were in Louisiana where it was one year, they were in Delaware where it was two years, they visited Mississippi where it's six years. So there's no limit on the number of placeholder actions they file. And then Your Honor makes a good point that other than having to litigate the race, judicata issue after the fact on claims that otherwise would have been easily barred by the statute, which is a typical thing that happens in a personal injury case, the defendants would have to do that, the courts would have to do that. I think that it's quite wasteful. But you also have to consider the other circumstance. They're in Louisiana, things are not going well, they dismiss. Now that's a little bit harder to do in federal court, not so hard to do in certain states' courts, but in any event let's assume they successfully dismiss because they see the writing on the wall. Then they get a complete do-over in Delaware and next in Mississippi because they've been able to hold the statute steady. I think the statute of limitations is quite well designed to work with the law of race judicata. I mean a lot of times your statute is going to run if you're a personal injury plaintiff while you litigate your original claim. And that's okay because you're having your day in court. Are there any specifics as to docket control or judicial economies that were mustered by your side before the district court and or articulated by the district court in his opinion? Well, yes, Your Honor. I mean we sought to dismiss the second filed action as duplicative and wasteful of judicial resources. That sounds to me like a rather wooden incantation of a principle. What were the specifics as to this case? Well, as to this case, Your Honor, we were dealing with 260 plaintiffs, 230 of which showed back up in federal court in Delaware. We had already briefed at this point in time, although no decision had been rendered, the particulars not only of the class action tolling but also because many of these plaintiffs filed two and three and four times elsewhere, we had detailed before Judge Barbier, and you could see from his opinion that he certainly put the time in to learn the details of the various other reasons these plaintiffs might have been barred elsewhere. You were starting to say, I think at the end of your five minutes, talk about SEMTAC and Louisiana law and res judicata and preclusion. What's your view of what Louisiana law is that should be applied by the district court? Well, Louisiana law in the Sowers decision is quite clearly that a statute of limitations based judgment is preclusive. It is considered to be on the merits for res judicata purposes. Louisiana law is completely consistent in that. Plaintiffs have cited the court to no contrary authority. Does that mean it applies inter-jurisdictionally as well? Yes, certainly in a federal district court, because a federal district court has to look to, what SEMTAC says is a Delaware district court has to look to Louisiana law, and if Louisiana would treat the judgment as preclusive, then Delaware has to treat it as preclusive. I'm reading from page 504 of the SEMTAC opinion now, quote, dismissal on limitations ground does not have claimed preclusive effect in other jurisdictions with longer, unexpired limitation periods. That quote, I believe, Your Honor, is from the Supreme Court's discussion of the, what they call the traditional rule as part of a hypothetical under Rule 41. Louisiana does not follow the traditional rule. The federal courts, at least in the Fifth Circuit, do not follow the traditional rule, which is that a statute of limitations judgment is not on the merits for res judicata purposes. So if Louisiana followed that rule, it would be correct that they wouldn't be barred, but it doesn't. Louisiana law is what it is. Let me ask you this question. Your adversary makes the argument that when we look at the purpose of the second file rule, there was a legitimate good faith basis. The panel decision found that there was bad faith. What test should we apply going forward in considering whether the proposed basis for the second filed case is subject to a bad faith analysis? Should it be subject to a good faith analysis? Is it a weighing of essentially lawyer affidavits as to whether there's a legitimate basis, and if so, there's a stay. If it's not legitimate and dismissal is appropriate, how should we analyze it? Well, I think what the court does now and what the cases favor makes sense, which is the district court has discretion to reach a fair and reasonable outcome based on the totality of the circumstances. But the district courts are limited if the jurisdiction of the first filed court is in question. So they do have to wait, I think, and stay if the people litigating the first court might not get to litigate at all, any issue. Not a deferment of defense, not any issue. That seems to be the consistent limitation across the circuits is make sure somebody has jurisdiction, but once another court has jurisdiction, then you are free to dismiss. On the separate issue of vexatious and harassing litigation, which I think Your Honor is getting to, the Seventh Circuit certainly endorsed, and I think it is the right answer, that you should be able to separately move to dismiss based on the harassing and vexatious nature of the litigation, which I think is generally going to be established really by circumstantial evidence as opposed to subjective evidence. In other words, this plaintiff has filed and dismissed in four different jurisdictions. They litigated through summary judgment up to the Fifth Circuit in Louisiana, and now they want to go on to Delaware and keep litigating. At some point it has to end. At some point it is vexatious. Getting back to the regidicata issue, we have to, as you said before, we have to look at Louisiana law. In 2002, the Louisiana Court of Appeals decided the case called Griffin. Familiar with the case? Louisiana Court of Appeals. In any case, that court held that a timeliness dismissal in federal court did not bar factually related claims in Louisiana State Court. Griffin said that the plaintiff's right of access to the courts should be preserved. It also said that defendants may not justly deny plaintiffs their day in court by erecting only a procedural screen. Do you think that's what's occurring in this case? I believe, Your Honor, that the rule from Sowers v. Plott, which is the Louisiana law, on whether once you have a judgment on a statute of limitation case, where this was litigated through summary judgment, it wasn't dismissed, that once you have a judgment that it is a res judicata bar. And I believe that's Louisiana Supreme Court in Sowers v. Plott. So once you've conceded that the uncertainty about jurisdiction in the second filed forum would make it an abuse of discretion to dismiss with prejudice, then aren't we simply going back to look at whether the statute of limitations is best viewed like jurisdiction in a gatekeeping sort of function or in a merits type function? It goes back to first principles about access to the courts, the jurisdictional bar, and whether we want plaintiffs to have the opportunity for a hearing on the merits of their illegal action. Why, if we look at it that way, why isn't statute of limitations in the category of the gatekeeping types of things like jurisdiction? I think because, Your Honor, jurisdiction has always been seen as separate in that regard versus statute of limitations, any other procedural defect, any other affirmative defense, because it prevents you from having any forum. Here, the plaintiffs had a forum, they litigated in that forum, they appealed in that forum. This is not a no-forum case. So I think that that distinguishes jurisdiction from any other argument that keeps you out of court, whether it's a procedural faux pas or because you blew the statute of limitations. And I don't think the statute of limitations is unique in terms of something you would move over into the same category as jurisdiction, because there are lots of other ways in which you can lose your right to have your claim heard on the merits, in the sense of the merits of were you harmed, and if so, by whom, in the case of a personal injury case. If you look at the Fifth Circuit's decision in Berger, there they had three defendants, two of whom the first court didn't have jurisdiction over, the third of whom the court had jurisdiction over, dismissed some of the claims, I think dismissed the RICO claims, and entered summary judgment on the ADA claims. The court does not say why summary judgment was won on the ADA claims. We don't know that. We don't know why the other claims were dismissed. But what the Fifth Circuit held is the dismissal was prejudiced as to the third defendant is affirmed because there was jurisdiction, and the plaintiff got to proceed against that defendant in that court. It didn't matter that they lost on a motion to dismiss or summary judgment, but as to the other two, when there wasn't jurisdiction, it's overturned, because everybody does need to have at least one form. But I thought Judge Krause's point was, if you look at the particular facts of this case, there was a point in time when the jurisdictional question wasn't a certainty, and that's the point in time when the suit was filed. So I think that, if I can be presumptuous, I think that's what she wants a response to. What do you do when at that point in time there is uncertainty? Why isn't it a legitimate basis to then file and then stay until that jurisdictional question is fully resolved? Well, in this case, Your Honor, there was no jurisdictional issue when Dole, for example, moved to dismiss under the First Amendment. I meant the statute of limitations. Oh, okay. I'm sorry. I'm sorry. I said jurisdiction. Well, there was a statute of limitations issue, but what I was trying to say to Judge Krause is I don't think statute of limitations falls in the same category as jurisdiction, and I think it's a mistake to put them in the same category, because jurisdiction has the unique aspect of almost always being heard right up front. Very soon that issue is going to get resolved, and people are going to know they need to go somewhere else with their claims. Statute of limitations, just like a lot of affirmative defenses, is often can be heard at trial, can be heard very late in the case, is often facts-driven on when, where, and how the plaintiff knew something or didn't know something, and so really you're back to a no dismissal rule if you have to say stay a second file of action if there's a chance the defendant could win on statute of limitations eventually, even if they haven't raised the defense yet, because maybe a fact develops that causes you to raise it later. I'm not sure I'm following the answer to the difference in the decision you're making. It's the same, qualitatively it seems to me to be exactly the same situation with a temporal variation, but I don't see a qualitative difference in those situations, and when you get it up front with anyone and when you don't, you can make the same argument that when there's a jurisdictional issue, you get an automatic dismissal, first file rule. Maybe you can help me a little more get to where you're trying to go. Well, I think the qualitative difference is that when there's no jurisdiction, you don't get to go into the courthouse. The door is not open to you, and you don't get to argue your case, whether it's that your case was timely or anything else. You get to argue nothing. Well, you get to argue jurisdiction. You get to go into the court to argue jurisdiction. Right, you get to go into the court to argue that you should get to be in the court, but you don't get to be in the court. Maybe I should say it that way. With statute of limitations, you're there. You get to make your arguments that your claim was timely, and you may lose that, but you get to make it. I mean, if you look at the Ninth Circuit's decision in Sirlin, there the plaintiff's failure was to timely serve the complaint, and so he filed another duplicative action, essentially to cure that procedural defect, which is much less substantive than an untimely claim, and what the Ninth Circuit held was that doesn't work. You've entered the courthouse. You have a court that has jurisdiction over you. You have to follow the rules, and if you lose for procedural reason or otherwise, you lose. Lots of plaintiffs don't get to what they feel would be the merits of their claims because they lose on various affirmative defenses, but the courts, under all sorts of doctrines, have held that they've nonetheless had their day in court, and in fact, that's part of the reason that the courts in Louisiana and the Fifth Circuit and elsewhere find that a statute of limitations defense is on the merits because they view it as being on the merits of the claim. So from your point of view, the only time there could be a dismissal without prejudice is when there's a question of jurisdiction in the first filed court. Otherwise, it could be a dismissal with prejudice for any other circumstance. I think, yes, I think it could be a dismissal with prejudice. I certainly wouldn't say that it has to be or needs to be. I think that what we've seen in the case of the Ninth Circuit... So are you advocating that as a rule that this court should adopt? We asked your adversary during his portion of the argument for assistance in terms of what kind of a rule this court should craft. Is that your suggested rule? My suggested rule, Your Honor, is really, I think, the rule that you already have, which is that the issue is generally speaking left to the sound discretion of the district court, and you've given good guidance in EEOC and Crosley as to how he or she should exercise that discretion. I think if you want to limit that discretion, that the law of the very circuit certainly supports a jurisdictional limitation, guidance that dismissal really with or without prejudice shouldn't occur if there's a jurisdictional issue in the first court. But beyond that, I do think it gets so fact-specific that it is best left to the discretion of the district court as to how to handle stay, transfer, dismiss with or without prejudice. And shouldn't that be done with consideration of equity? I think it should, and it certainly was here. Judge Andrews looked at his options. He wasn't a mechanical application of the rule. He said it's not equitable to let the plaintiffs relitigate in Delaware what they've already litigated in Louisiana. And I think to go back to one of the questions from the court earlier... Even if Delaware had a different statute of limitations? Yes, even if they had a different statute of limitations, and on that issue I would recommend the court to Thompson-Truckin, which was not decided on a choice of law issue, as counsel indicated. If you're looking at Louisiana law, let me refer you to the Louisiana Equitable Exception Statute. It's 13-4232. The statute says that a judgment does not bar another action by the plaintiff when exceptional circumstances justify relief from the re judicata effect of the judgment. Wouldn't that be of great importance before Judge Andrews dismissed his case with prejudice? I don't think they showed Judge Andrews exceptional circumstances, Your Honor. What they admitted to him quite freely was that they were filing a duplicative action because they wanted him to answer the class action totally question different than Judge Barbier had answered. That was the court of last resort, wasn't it? Well, they... I mean, I suppose the Supreme Court on the Treveri Appeal was the court of last resort, but when Judge Andrews granted the motion under the first file rule, they had not yet lost in Louisiana. Our motion for summary judgment was still pending, so they didn't know they were going to lose. In Louisiana, I think we should remember, which they tried to set aside, but I think the court did inquire, it's where they chose to go. You have to remember that these plaintiffs and this council have been litigating DVCB cases since at least 1993. Excuse me. If this was solely a statute of limitations question, we're not dealing with deciding a cross-jurisdictional tolling rule, would you believe it was within Judge Andrews' discretion to dismiss with prejudice the Delaware action? It was just a question of who had a longer statute of limitations. Yes, Your Honor, because I would agree with the Fifth Circuit's analysis in Thompson Trucking, where the plaintiff sued in Louisiana, they lost on the statute of limitations, they then refiled in Mississippi, because Mississippi had a six-year statute. And they said that was okay, because the only reason they lost in Louisiana was untimeliness. And what the Fifth Circuit said is, no, that's not okay. In Thompson, the court actually looked at the second form's statute of limitations and made an adjudication as to the application of that second form, and that's brought out in the concurring opinion. That's not what we have here. We don't have a situation here where the courts in Louisiana looked at the applicability of the Delaware statute of limitations and knew about it, then you would have conclusive effect based upon what happened in Louisiana. That would make it on all fours with Thompson Trucking. But that's not the situation here. Well, I would say two things in response to that, Your Honor. First, it is on all fours with the majority opinion in Thompson Trucking. It is the concurrence that says the plaintiffs committed themselves on the choice of law question by raising that question in Louisiana, and the concurrence actually says the majority gets to the right result by the wrong path. But the majority says you can't scoot one state over and refile just because there's a longer statute of limitations. So I do think the majority opinion is on all fours. And here, basically, Judge Andrews did know that to be the case because they were 15 years too late was the issue. It wasn't one year versus two years. I think your answer, which is why it is on, but I wanted you to finish your answer, but I think you finished it and now we're shading back to argument. So unless I'm wrong about that, thank you for your time, and I'll ask Mr. Capote to make his presentation. Thank you, Your Honors. Good morning. May it please the Court, Judge McKee. Steve Capone from Black Realm on behalf of the Chiquita defendants. I just want to briefly touch on the issue of personal jurisdiction. I don't believe that the issues addressed in personal jurisdiction really implicated why an en banc hearing was granted, because the prior unanimous decisions did not conflict the Supreme Court precedent or the decisions in any other circuit. And that's because I think both Judge Andrews and the prior panel properly applied the Supreme Court precedent as articulated in Daimler and in Goodyear. Why shouldn't there at least be discovery on that issue? I mean, you're talking about a very large corporation. I understand the limitations we have in our Act of Daimler in terms of what is sufficient contract with a firm to give rise to one's presence there. But why not at least allow discovery to get into whether or not there is jurisdiction? I think, Your Honor, you have to have, under the precedent, at least cross some threshold here. And here the only threshold the plaintiffs sought to cross is to say, well, Chiquita has a subsidiary in the state, but there's no allegation that that subsidiary had anything to do with the claims involved or that Chiquita has any greater involvement in the state. I mean, if you take a state, for example, Delaware, which many, many companies are incorporated in Delaware and have some small operations, I don't think that then gets you past the courthouse steps to say, well, let's now delve into expense of discovery to see if we can come up with a basis for jurisdiction. Thank you, Mr. Carney. Thank you. Thank you, Your Honor. Let's start where you left off. Yes. What is there, other than just a naked assertion in your complaint, what is there that you presented that will get you jurisdictional discovery, other than the verifications that there's activity in Delaware? Right. Well, the activity is a terminal where there's weekly shipping. And the issue on which we would seek discovery is the relationship between that Chiquita subsidiary and the Chiquita corporate parent. We're not trying to get to the point that this is a piercing of the corporate bailer. We're not trying to set aside the legal friction of the separate entities, are we? Well, the agency theory of jurisdiction has been accepted by some circuits, and we think that a factual development of the extent to which they're intertwined would play into that. Yes. I mean, whether or not it amounts to piercing of the corporate bailer,  what we do know is that the two entities are intertwined, and we think at minimum there should be discovery on that. I mean, Daimler doesn't close the door completely. It says that placement corporation and principal place of business are the primary ways in which a corporation is at home in a certain place, but careful to say it's not the only way. So we agree with the notion of jurisdictional discovery, at least to investigate that possibility. Isn't the fundamental problem here that the district court denied discovery and denied transfer based on its first filed ruling? Yes. So if we are to revisit that, if we disagree with the district court, then those issues come back into play. Right. Yes, Your Honor. And the district court also did not address 28 U.S.C. 1631, which provides that where there is not jurisdiction, the court shall in mandatory language, if in the interest of justice, transfer to the court that does have jurisdiction. Correct, Your Honor. Yes. Those are things that were we to reverse would need to be addressed by the district court in the first instance. Yes, Your Honor. Yes, that's correct. And I think so those issues would be open. I just wanted to make a couple of points in rebuttal, which were, first is that our friends on the other side seem to say that the court's duty is to make sure someone has jurisdiction, and at that point, then dismissal would be appropriate. But they want to limit that to personal jurisdiction, and they think the personal jurisdiction is a special thing that's different from the statute of limitations. And we think that that principle, that distinction doesn't withstand scrutiny, first because, as the Chief Judge mentioned, the principles operate in the same way. There are both ways of getting into court. They both implicate the fundamental access to a forum, the right to access to a forum that is the ultimate right that we're trying to vindicate here. And it also doesn't match up with the cases. I mean, I quoted from the Berger case in the Fifth Circuit, which in turn was quoting the Moore's Treatise. And the Moore's Treatise mentions both personal jurisdiction and statute of limitations as the reasons that the dismissal with prejudice would be inappropriate. In other words, if there's any uncertainty about either issue, dismissal with prejudice is inappropriate. The Central States case from the Seventh Circuit is not a case involving a personal jurisdiction uncertainty. It's just that the first to file cases and the rule against dismissal with prejudice is not limited to uncertainty about personal jurisdiction. And the other point I wanted to make on rebuttal is that Judge Fuentes is completely right about Louisiana prescription law. The Griffin case involved two different courts, and that's why it's very relevant here. The Louisiana prescription statute has the extraordinary circumstances provision. It has an equitable component. And extinguishing the right to a forum, to the plaintiff's only forum, is the kind of extraordinary and equitable circumstance which would justify an exception. In fact, the Louisiana Supreme Court in 1972 issued a landmark ruling in a case called Foster v. Brough, which said under Louisiana jurisprudence, prescription statutes are strictly construed, and have two permissible constructions that is adopted, which favors maintaining rather than barring the action. What are your exceptional circumstances here? It's our only forum. It's our only chance to have any claim. And the Sowers case that my friend on the other side mentioned is inapposite because it's involved a Louisiana malpractice claim, and the same claim under Louisiana law twice in Louisiana state court. It didn't capture the primary feature of this case, which is the Louisiana courts say nothing about the application of the Delaware statute of limitations. In other words, the fact that our claim might be barred under the Louisiana prescriptive statute says nothing about whether the Delaware courts could entertain it under the Delaware statute of limitations. Thank you very much. Thank you. Thank you. A pretty helpful argument and very well presented. We'll take the matter under writings.